UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LOUIS KUCHARCZYK,

                                    Plaintiff,

        v.

WESTCHESTER COUNTY, et al.

                                    Defendants.

No. 14-CV-601 (KMK)

OPINION AND ORDER

Appearances:

Louis Kucharczyk
Valhalla, NY
*Pro Se Plaintiff*

John Martin Murtagh, Jr., Esq.
Jaazaniah Asahguii, Esq.
Gaines, Novick, Ponzini, Cossu & Venditti, LLP
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Pro se Plaintiff Louis Kucharczyk ("Plaintiff") filed the instant Complaint pursuant to 42

U.S.C. § 1983 against Westchester County, Correct Care Solutions LLC, Correct Care Solutions

New York, Dr. Ulloa ("Dr. Ulloa"), N.P. Linda Beyer ("Beyer"), Medical Liaison June Yozzo

("Yozzo"), Nurse Michael Kelly ("Kelly"), and N.P. Tufaro ("Tufaro") (collectively

"Defendants"), alleging that Defendants acted with deliberate indifference to his medical needs

in violation of the Eighth Amendment.  (Compl. ¶ II.D (Dkt. No. 2).)  Plaintiff also alleges that

Defendants have engaged in a pattern and practice of deliberate indifference to inmates' medical

needs.  (*Id.*)  Before the Court is Defendants' Motion To Dismiss the Complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6).  (*See* Mot. To Dismiss ("Mot.") (Dkt. No. 13).)  For

the following reasons, Defendants' Motion is denied.

I.  Background

A.  Factual Background

The following facts are drawn from Plaintiff's Complaint and the documents attached

thereto and are taken as true for the purpose of resolving the instant Motion.  Plaintiff was an

inmate at Westchester County Jail ("WCJ").  (Compl. ¶ I.A.)  On February 28, 2012, Plaintiff

arrived at WCJ after his discharge from Lawrence Hospital in Bronxville, where he was treated

for injuries related to a car accident prior to his arrest.  (*Id.* ¶ II.D.)  When he arrived, an intake

nurse in the booking department interviewed Plaintiff, and Plaintiff notified her of severe pain in

his lower abdomen area.  (*Id.*)  The nurse told Plaintiff to write a "sick call" when he arrived at

his assigned housing unit and she did not offer Plaintiff medication for his pain.  (*Id.*)  When he

arrived at his housing unit, Plaintiff wrote to the "sick call department about [the] severe pain in

his groin area," and Plaintiff "was determined to possibl[y] have a hernia [and] was to be seen by

a surgeon."  (*Id.*)  Plaintiff was not, however, seen by a surgeon, and accordingly he wrote

approximately 15 to 20 "sick calls," notifying the "sick call department" of his severe pain.  (*Id.*)

In or around June 2012, Plaintiff saw a surgeon, who determined that Plaintiff needed

surgery to prevent the further expansion of two growing hernias located in his groin area, and

Plaintiff was approved for the required surgery.  (*Id.*)  Plaintiff wrote several "sick calls" from

June through July 2012 to "investigate the status" of his surgery.  (*Id.*)  Because of Plaintiff's

severe pain, Beyer saw Plaintiff in June or July 2012, and she told Plaintiff to "stop crying" and

that she would "give [him a] belt for [the] hernia [and] if the hernia c[a]me[] out in a bulge [he

should] just push it back in."  (*Id.*)  Beyer did not offer Plaintiff any medication to relieve his

2

pain. (*Id.*) Plaintiff continued to follow-up through the "sick call procedure to investigate the status of his scheduled [hernia] operation." (*Id.*)

Tufaro called Plaintiff to the "sick call area" and Plaintiff explained that he was in severe pain and inquired about the status of his operation. (*Id.*) Tufaro told Plaintiff that he did not know when he would be called for surgery, and if the hernia "pop[ped] out[,] [he should] just push it back in [and he would] be ok[ay]." (*Id.*) Tufaro also instructed Plaintiff to write to Yozzo. (*Id.*) Plaintiff wrote to Yozzo to inform her of his pain and the delay in his surgery. (*Id.*) When Plaintiff received no response from Yozzo, he submitted a grievance to Sergeant Coletti ("Coletti"). (*Id.*) Coletti refused to accept Plaintiff's grievance, stating that "we are not medical" and instructed Plaintiff to "mail the grievance to medical." (*Id.*) In or around August 2012, Plaintiff attempted to submit the grievance to Sergeant Omess ("Omess"), who told Plaintiff that he was "wasting [his] time." (*Id.*)

Plaintiff then wrote to Kelly, complaining about his pain and the delay of his approved surgery. (*Id.*) Kelly did not respond. (*Id.*) Yozzo "finally came to [Plaintiff's] housing unit" and informed Plaintiff that she spoke with Dr. Ulloa, the surgery was not going to take place because Plaintiff's injuries were not life threatening, and that he would have to wait until he was transferred to the "New York State prisons or released." (*Id.*) Plaintiff explained to Yozzo that he was in severe pain and was at risk for further injury, but she ignored his request for help. (*Id.*) As of the date of the instant Complaint, Plaintiff has not been offered "any sort of relief except [for] a hernia belt[,] which is not helpful." (*Id.*)

Plaintiff alleges that due to Defendants' conduct he has experienced severe pain, depression, and anxiety, and his hernia has expanded. (*Id.* ¶ III.) He states that he tried to file grievances, but the "correctional supervisors refused to accept [the grievances], stating [that the

issues were] medical[,] not us." (*Id.* ¶ IV.F.)  Plaintiff claims that he wrote complaints to Kelly

and Yozzo, the Westchester County Attorney Robert Meehan, and "the [C]ivil [R]ights [U]nit at

86 [C]hambers [Street]" in New York.  (*Id.* ¶ IV.G.)  Plaintiff requests damages for his pain and

suffering.  (*Id.* ¶ V.)

Plaintiff attaches a report to the Complaint from the Civil Rights Division of the United

States Department of Justice (the "DOJ") dated November 19, 2009 (the "DOJ Report").

(Compl. Ex. 12.)  The DOJ Report was completed after the DOJ conducted an on-site inspection

at WCJ from February 25–28, 2008 as part of an investigation of WCJ, pursuant to the Civil

Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. § 1997.  (*Id.* at 1.)  The DOJ

Report found, among other deficiencies, that WCJ "ha[d] a pattern of failing to . . . provide

inmates with adequate medical . . . care," which "violate[d] WCJ inmates' constitutional rights."

(*Id.* at 7.)  As relevant here, the DOJ Report concluded that "[a]lthough WCJ has instituted a

policy for submitting grievances, it is not consistently implemented or effectively publicized,"

which posed a risk to inmates that perceived that their serious health needs were being unmet.

(*Id.* at 23.)

B.  Procedural History

Plaintiff filed the Complaint on January 27, 2014, alleging that Defendants deprived him

of medical care and that Westchester County has a pattern and practice of denying inmates

adequate medical care.  (Dkt. No. 2.)  The Court granted Plaintiff's request to proceed in forma

pauperis on February 4, 2014.  (Dkt. No. 3.)  Pursuant to a scheduling order adopted at a

pre-motion conference held before the Court on May 16, 2014, (Dkt. No. 12), Defendants filed

their Motion To Dismiss and supporting papers on July 1, 2014, (Dkt. Nos. 13–16).  Plaintiff did

not submit papers in opposition to the Motion.

## II.  Discussion

### A.  Applicable Law

#### 1.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citations omitted).  Instead, the Supreme Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563.  A plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570. But if a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed."  *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

For the purposes of Defendants' Motion To Dismiss, the Court is required to consider as true the factual allegations contained in the Complaint.  *See Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) ("We review *de novo* a district court's dismissal of a complaint

pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)); *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008) (same).  "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).  Moreover, the "failure to oppose [Defendants'] [M]otion [T]o [D]ismiss does not, by itself, require the dismissal of [Plaintiff's] claims." *Leach v. City of New York*, No. 12-CV-2141, 2013 WL 1683668, at *2 (S.D.N.Y. Apr. 17, 2013).  Rather, even though "a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000).  Finally, the court construes "the submissions of a *pro se* litigant . . . liberally" and interprets them "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted).

### 2.  Deliberate Indifference to Medical Needs

"The Eighth Amendment forbids deliberate indifference to serious medical needs of prisoners." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (internal quotation marks omitted).  "There are two elements to a claim of deliberate indifference to a serious medical condition." *Calozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009).  "The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious." *Spavone*, 719 F.3d at 138 (internal quotation marks omitted).  Analyzing this objective

requirement requires two inquiries.  "The first inquiry is whether the prisoner was actually deprived of adequate medical care."  *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006).[1] The second inquiry is "whether the inadequacy in medical care is sufficiently serious.  This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner."  *Id.* at 280.  To meet this requirement, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health."  *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013).  "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition."  *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Nevertheless, the Second Circuit has "presented the following non-exhaustive list of factors to consider when evaluating an inmate's medical condition: (1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain."  *Morales v. Fischer*, No. 13-CV-6134, 2014 WL 4705108, at *5 (W.D.N.Y. Sept. 22, 2014) (quoting *Brock*, 315 F.3d at 162) (internal quotation marks omitted); *see also Griffin v. Amatucci*, No. 11-CV-1125, 2014 WL 2779305, at *4 (N.D.N.Y. June 19, 2014) (same).

"The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care."  *Spavone*, 719 F.3d at 138.  Under the second prong, the question is whether defendants "knew of and disregarded an excessive risk to [a plaintiff's] health or safety and that [they were] both aware of facts from which the inference could be

---

[1] "As the Supreme Court has noted, the prison official's duty is only to provide reasonable care."  *Salahuddin*, 467 F.3d at 279 (citing *Farmer v. Brennan*, 511 U.S. 825, 844–47 (1994)).

drawn that a substantial risk of serious harm existed, and also drew the inference." *Calozzo*, 581

F.3d at 72 (alterations and internal quotation marks omitted).  In other words, "[i]n

medical-treatment cases not arising from emergency situations, the official's state of mind need

not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves

that the official acted with deliberate indifference to inmate health." *Nielsen v. Rabin*, 746 F.3d

58, 63 (2d Cir. 2014) (internal quotation marks omitted).  "Deliberate indifference is a mental

state equivalent to subjective recklessness" and it "requires that the charged official act or fail to

act while actually aware of a substantial risk that serious inmate harm will result." *Id.* (internal

quotation marks omitted).  In contrast, mere negligence is not enough to state a claim for

deliberate indifference.  *See Walker*, 717 F.3d at 125; *Vail v. City of New York*, —F. Supp. 3d—,

2014 WL 6772264, at *9 (S.D.N.Y. Dec. 2, 2014) (same).  Moreover, "mere disagreement over

the proper treatment does not create a constitutional claim," and accordingly, "[s]o long as the

treatment given is adequate, the fact that a prisoner might prefer a different treatment does not

give rise to an Eight Amendment violation." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.

1998); *see also Banks v. Annucci*, —F. Supp. 3d—, 2014 WL 4824716, at *9 (N.D.N.Y. Sept.

30, 2014) (same).

### 3.  Monell Liability

"Congress did not intend municipalities to be held liable [under § 1983] unless action

pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v.*

*Dep't of Social Srvs. of the City of N.Y.*, 436 U.S. 658, 691 (1978).  Thus, "to prevail on a claim

against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to

prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right;

(3) causation; (4) damages; and (5) that an official policy of the municipality caused the

constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008); *cf. Salvatierra v. Connolly*, No. 09-CV-3722, 2010 WL 5480756, at *10 (S.D.N.Y. Sept. 1, 2010) (dismissing claim against municipal agencies where plaintiff did not allege that any policy or custom caused the deprivation of his rights), *adopted by* 2011 WL 9398 (S.D.N.Y. Jan. 3, 2011); *Arnold v. Westchester County*, No. 09-CV-3727, 2010 WL 3397375, at *9 (S.D.N.Y. Apr. 16, 2010) (dismissing claim against county because complaint did "not allege the existence of an unconstitutional custom or policy"), *adopted sub nom. Arnold v. Westchester Cnty. Dep't of Corr.*, 2010 WL 3397372 (S.D.N.Y. Aug. 15, 2010).  The fifth element reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *see also Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right.").  In other words, a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (italics omitted); *see also Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal entity may only be held liable where the entity *itself* commits a wrong").  Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnmental bodies can act only through natural persons . . . [and] governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

"In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'" *Davis v. City of New York*, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002), *aff'd*, 75 F. App'x 827 (2d Cir. 2003). A plaintiff may satisfy the "policy or custom" requirement by alleging "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted). Under the third method, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997); *see also Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (noting that a municipality's custom "need not be memorialized in a specific rule or regulation"). Therefore, a plaintiff may establish municipal liability by demonstrating that a policy maker "indirectly caused the misconduct of a subordinate municipal employee by acquiescing in a longstanding practice or custom which may fairly be said to represent official policy." *Miller v. County of Nassau*, 467 F. Supp. 2d 308, 314 (E.D.N.Y. 2006). To prevail on this theory of municipal liability, however, a plaintiff must prove that the custom at issue is permanent and well-settled. *See Praprotnik*, 485 U.S. at 127 (noting that the Supreme Court "has long recognized that a plaintiff may be able to prove the existence of a widespread practice

that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law'" (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970) (some internal quotation marks omitted))).

Normally, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." *Newton*, 566 F. Supp. 2d at 271; *see also City of Okla. v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation."). In the end, "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." *Roe*, 542 F.3d at 37 (quoting *Brown*, 520 U.S. at 404); *see also Tuttle*, 471 U.S. at 824 n.8 ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a *constitutional* violation. There must at least be an affirmative link between [for example] the training inadequacies alleged, and the particular constitutional violation at issue."); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the City."); *Johnson v. City of New York*, No. 06-CV-9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that after demonstrating the existence of a municipal policy or custom, "a

plaintiff must establish a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights" (internal quotation marks omitted)).

At this stage, of course, Plaintiff need not prove these elements, but still must plead them sufficiently to make out a plausible claim for relief.  Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168 (1993), a complaint does not "suffice if it tenders naked assertion[s] devoid of further factual enhancement," *Iqbal,* 556 U.S. at 678 (alteration in original) (internal quotation marks omitted).  Thus, to survive a motion to dismiss, Plaintiffs cannot merely allege the existence of a municipal policy or custom, but "must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists."  *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012).  Put another way, conclusory allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details.

B.  Analysis

1.  Deliberate Indifference Claim

a.  Objective Prong

The Court finds that Plaintiff has sufficiently alleged that Defendants were deliberately indifferent to his serious medical needs.  Taken as true, Plaintiff's allegations satisfy the objective prong of the deliberate indifference test.  First, Plaintiff contends that despite the fact that it was determined that he needed surgery for his hernia in June 2012, Plaintiff's surgery was delayed and, ultimately, Yozzo informed him that the surgery would not occur because Plaintiff's injuries were not life threatening, and he would have to wait until he was transferred

to the "New York State prisons or released." (Compl. ¶ II.D.) Plaintiff alleges that despite his

approval for surgery, as of the date that he filed the Complaint, he has not been offered "any sort

of relief except [for] a hernia belt[,] which is not helpful." (*Id.*) The Court finds that these

allegations are sufficient to suggest that Plaintiff "was actually deprived of adequate medical

care." *Salahuddin*, 467 F.3d at 279, 281 (concluding that the court could not, "as a matter of

law, find it reasonable for a prison official to postpone for five months a course of treatment for

an inmate's Hepatitis C because of the possibility of parole without an individualized assessment

of the inmate's actual chances of parole"); *see also Idowu v. Middleton*, No. 12-CV-1238, 2013

WL 4780042, at *7 (S.D.N.Y. Aug. 5, 2013) (finding that the plaintiff presented evidence from

which a jury could conclude that the defendant's failure to treat the plaintiff's side effects when

the plaintiff complained about them on September 25, 2011, but was not provided with medical

attention until November 16 or 18, 2011, deprived the plaintiff of adequate medical care);

*Benitez v. Palmer*, No. 12-CV-448, 2013 WL 5310245, at *12 (N.D.N.Y. July 8, 2013)

(concluding that the plaintiff alleged sufficient facts to satisfy the objective element of the

deliberate indifference test because, among other facts, although the plaintiff's blood tests

indicated that he might have had Hepatitis B and C and the diagnosis could not be confirmed

without a liver biopsy, a biopsy was not performed until July 23, 2003, "[d]espite repeated

requests for a biopsy in September 2002").

Turning to the second inquiry under the objective prong, Plaintiff has adequately alleged

that "the inadequacy in [his] medical care [was] sufficiently serious." *Salahuddin*, 467 F.3d at

280. The Court notes that several courts have found, in the context of a summary judgment

motion, "that delay in providing surgery for a reducible inguinal hernia is not deliberate

indifference to a serious medical need." *Nicholas v. Pesanti*, No. 03-CV-879, 2005 WL 356776,

at *4–5 (D. Conn. Feb. 11, 2005) (granting the defendants' summary judgment motion because, among other reasons, the defendants' experts' affidavits stated that the hernia was not a serious medical need were not rebutted by evidence the plaintiff submitted); *see also McQueen v. County of Albany*, No. 08-CV-799, 2010 WL 338081, at *11–12 (N.D.N.Y. Jan. 28, 2010) (finding, on a motion for summary judgment, that the plaintiff's hernia was not "sufficiently serious to warrant constitutional protection" because, among other things, "the hernia was not incarcerated and therefore did not necessitate surgery" and that the plaintiff's "hernia caused him to suffer [only] intermittent pain and/or discomfort"); *Arroyo v. City of New York*, No. 99-CV-1458, 2003 WL 22211500, at *2 (S.D.N.Y. Sept. 25, 2003) (granting the defendants' summary judgment motion because the plaintiff's "inguinal hernia was not objectively a serious enough condition to satisfy the objective prong of the test" as the plaintiff had not "alleged, let alone presented evidence to show, that his condition was, at any point, fast degenerating or life threatening (internal quotation marks omitted)).  These courts, however, dismissed the plaintiffs' claims on motions for summary judgment, after considering the evidence of the plaintiffs' conditions.

Here, Plaintiff alleges that his pain was "severe," that he complained of his pain on several occasions, that it was determined that he needed surgery, and that as a result of Defendants' decision to deny him surgery, his hernia has expanded.  (Compl. ¶¶ II.D; III.)  While Plaintiff alleges that Yozzo stated that his "injuries were not life threatening," even if Yozzo's statement was correct, courts have found that conditions failing to amount to "life threatening" conditions are nonetheless "sufficiently serious" for the purpose of a deliberate indifference claim.  *See Chance*, 143 F.3d at 702–03 (holding that an unresolved dental condition, which caused the plaintiff great pain, difficulty eating, and deterioration of the health of his other teeth,

was sufficiently serious under the Eighth Amendment); *Salahuddin*, 467 F.3d at 281 (finding that a five month delay for treatment of an inmate's Hepatitis C was objectively serious).  Indeed, the Second Circuit has held that "the Eighth Amendment forbids not only deprivations of medical care that produce physical torture and lingering death, but also less serious denials which cause or perpetuate pain." *Todaro v. Ward*, 565 F.2d 48, 52 (2d Cir. 1977).  Plaintiff's allegations of severe pain, then, may constitute a condition that is sufficiently serious.

Moreover, "the seriousness of a delay in medical treatment *may* be decided 'by reference to the effect of delay in treatment.  Consequently[,] delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.'" *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003) (alterations and emphasis omitted) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)).  Here, Plaintiff alleges that despite the determination that he should have surgery in June 2012, Plaintiff had not received surgery by the time he filed his Complaint, which was many months later.  (Compl. ¶ II.D.)  *See Hunter v. City of New York*, 35 F. Supp. 3d 310, 319 (E.D.N.Y. 2014) (holding that the five-day "delay in providing [the plaintiff] with medical care weighs in favor of finding that [he] had an objectively serious condition, in light of the evidence that [the] [p]laintiff experienced persistent pain between the date of his arrest and the date the fractured rib was initially diagnosed").  Accordingly, the delay in Plaintiff's surgery could support or at least contribute to the seriousness of his condition.  Plaintiff has therefore met the objective prong of a claim of deliberate indifference to his medical needs.

### b.  Subjective Prong

The Court also concludes that Plaintiff has adequately pled the subjective prong of his

deliberate indifference claim.  Here, Plaintiff has alleged that each Defendant, "fail[ed] to act

while actually aware of a substantial risk" to his health.  *Nielsen*, 746 F.3d at 63 (internal

quotation marks omitted).  Specifically, Plaintiff alleges that Defendants examined him after it

was determined that he needed surgery for his hernias and he was approved for surgery.  Beyer

told Plaintiff to "stop crying" and stated that she would "give [him a] belt for [the] hernia [and] if

the hernia c[a]mes out in a bulge [he should] just push it back in," but did not give him

medication to relieve his pain.  (Compl. ¶ II.D.)  Similarly, Tufaro informed Plaintiff that if the

hernia "pop[ped] out[,] [he should] just push it back in."  (*Id.*)  Kelly failed to respond to

Plaintiff's request for help.  (*Id.*)  Yozzo, in turn, informed Plaintiff that she spoke with Dr. Ulloa

and the surgery was not going to happen because Plaintiff's injuries were not life threatening,

and he would therefore have to wait to receive surgery until he was transferred or his released

from WCJ.  (*Id.*)  When Plaintiff informed Yozzo he was in severe pain and at risk of further

harm, she ignored his request for help.  (*Id.*)

     If surgery was medically necessary, these "allegations support the claim that it was

deliberate indifference towards [Plaintiff's] medical needs, rather than an exercise of

professional judgment" to decide that Plaintiff could wait to be transferred or released for his

surgery.  *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974); *Colon v. Cnty. of Nassau*, No.

12-CV-4466, 2014 WL 4904692, at *6 (E.D.N.Y. Sept. 26, 2014) (explaining that a complaint

that suggested that the doctor "denied treatment because of budgetary constraints . . . could

support a conclusion that" the doctor was deliberately indifferent to the plaintiff's needs if the

treatment was medically necessary).  Plaintiff has adequately alleged, then, that his medical

condition was serious and that Defendants failed to address it and, therefore, that discovery of his

claims is warranted.  *See Adams v. Beaudouin*, No. 09-CV-2136, 2011 WL 240714, at *7

(E.D.N.Y. Jan. 24, 2011) (explaining that "[w]hether . . . [the] actions by [the] [d]efendants constituted adequate medical treatment or unconstitutional delay" where the plaintiff claimed that the defendants acted with deliberate indifference to his hernia when the pain was severe and the defendants continued to see him about the hernia and provided him a hernia belt "[could not] be determined without discovery on what, in fact, constituted adequate medical treatment"); *Jones v. Westchester Cnty. Dep't of Corr. Med. Dep't*, 557 F. Supp. 2d 408, 416 (S.D.N.Y. 2008) ("Whatever the ultimate merits of [the] [p]laintiff's claim, [the] [d]efendant's have jumped the gun by filing a pre-answer motion to dismiss [because] [m]any of the material questions in the case, such as 'What care is reasonable in these circumstances,' . . . are not ripe for adjudication on the basis of the complaint and its appended materials."). Accordingly, as Plaintiff has adequately pled both the objective and subjective prongs of a deliberate indifference claim to his medical needs, Defendants' Motion To Dismiss this claim is denied.

### 2. *Monell* Claim

Defendants also move to dismiss Plaintiff's municipal liability claim. The Court finds, however, that the Complaint sufficiently pleads a custom or policy that led to the violation of Plaintiff's constitutional rights and, therefore, the Motion To Dismiss this claim is also denied.

In the Complaint, Plaintiff states that he "raises a *Monell* claim for [a] pattern due to the fact that there [are] several claims pending in this court based on the same facts [he] allege[s] in [the instant] [C]omplaint." (Compl. ¶ II.D.) Plaintiff also "include[s] a copy of the [DOJ Report] . . . as proof of misconduct by" Defendants. (*Id.*)

To begin, "[t]he Second Circuit and the district courts within the Second Circuit have held that a plaintiff's citation to a few lawsuits involving claims of alleged [constitutional violations] is not probative of the existence of an underlying policy by a municipality . . . or

department of corrections." *Amenduri v. Village. of Frankfort*, 10 F. Supp. 3d 320, 341

(N.D.N.Y. Mar. 31, 2014) (collecting cases in the excessive force context); *see also Strauss v.*

*City of Chicago*, 760 F.2d 765, 768–69 (7th Cir. 1985) (holding, even pre-*Twombly* and *Iqbal*,

that allegations of complaints about similar conduct was insufficient to state a claim for a

widespread custom under *Monell* because "the number of complaints filed, without more,

indicates nothing," as "[p]eople may file a complaint for many reasons, or for no reason at all,"

and the fact that "they filed complaints does not indicate that the policies that [the plaintiff]

alleges exist do in fact exist"); *Rikas v. Babusch*, No. 13-CV-2069, 2014 WL 960788, at *3

(N.D. Ill. Mar. 12, 2014) ("[T]he fact that prior lawsuits were filed against [one of the

defendants] does not support [the plaintiff's] *Monell* claim nor does it evidence a widespread

municipal practice."); *Xian Ming Wu v. City of New Bedford*, No. 12-CV-11648, 2013 WL

4858473, at *2 (D. Mass. Sept. 11, 2013) (holding that a complaint's reference to two other

similar complaints is insufficient to survive a motion to dismiss); *Taylor v. Indianapolis Metro.*

*Police Dep't*, No. 09-CV-1399, 2011 WL 2605654, at *5 (S.D. Ind. June 30, 2011) (explaining

that "[c]ourts have routinely held that a handful of complaints and filed lawsuits, without more,

does not equate a showing of a well-settled and widespread practice" and collecting cases).

Some courts, however, have found that other lawsuits identified by a plaintiff that concern the

same practice and policy at issue in the complaint permit a plausible inference of deliberate

indifference. *See e.g.*, *Osterhoudt v. City of N.Y.*, No. 10-CV-3173, 2012 WL 4481927, at *2

(E.D.N.Y. Sept. 27, 2012) (noting that "[w]hile [the] plaintiff's citations to pending lawsuits and

settlement agreements will 'not suffice to overcome summary judgment . . . they do permit a

plausible inference' of deliberate indifference" (quoting *Ferrani v. Cnty. of Suffolk*, 790 F. Supp.

2d 34, 46 (E.D.N.Y. 2011)).  The Court need not, however, opine on whether pointing to other

lawsuits alleging similar claims to those in a plaintiff's complaint is ever sufficient to show a widespread policy or practice because here Plaintiff merely states that "there [are] several claims pending in this court based on the same facts [he] allege[s] in [the instant] [C]omplaint." (Compl. ¶ II.D.)  Plaintiff does not identify the cases in which these claims are alleged or state how many cases are pending.  The mere assertion that there are other cases pending that allege the same facts is "conclusory, and therefore must be disregarded."  *Simms v. City of New York,* No. 10-CV-3420, 2011 WL 4543051, at *3 (E.D.N.Y. Sept. 28, 2011) (dismissing allegations that did not provide any facts that would allow the court to infer what city policies or practices led to the alleged deficiency, and contained only legal conclusions and boilerplate) (citing *Iqbal,* 556 U.S. at 678–79), *aff'd,* 480 Fed. App'x. 627 (2d Cir. 2012); *Graham v. Cnty. of Erie,* No. 11-CV-605, 2012 WL 1980609, at *2 (W.D.N.Y. May 31, 2012) (noting that conclusory allegations in a complaint are not entitled to the presumption of truth and must be stripped away (citing *Iqbal,* 556 U.S. at 678–79)).

Nevertheless, the Court finds that Plaintiff has sufficiently alleged "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware."  *Brandon*, 705 F. Supp. 2d at 276–77.  Under this theory, Plaintiff must allege "that the relevant practice is so widespread to have the force of law," *Brown*, 520 U.S. at 404, which is to say, that it is a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity," *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989); *see also Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir. 2000) (same).  A court in this District has explained that "[w]idespread means that [the unconstitutional acts in question] are common or prevalent throughout the [government body]; well-settled means that the [unconstitutional acts in question] have achieved permanent, or close

to permanent, status." *Davis*, 228 F. Supp. 2d at 346.

Here, the DOJ Report appended to Plaintiff's Complaint is sufficient to allege a widespread practice at WCJ of which policymakers were aware.  Indeed, other courts have denied motions to dismiss *Monell* claims when the constitutional violations a plaintiff alleges are supported by the same DOJ Report relied on here.  *See Santiago v. Westchester County*, No. 13-CV-1886, 2014 WL 2048201, at *6 (S.D.N.Y. May 19, 2014) (holding that the plaintiff's allegations of excessive force stated a *Monell* claim in part because "[t]he results of the CRIPA investigation allegedly concluded that the [WCJ] inadequately protected inmates from harm and use of excessive force by staff"); *Shepherd v. Powers*, 11-CV-6860, 2012 WL 4477241, at *10 (S.D.N.Y. Sept. 27, 2012) (denying the defendants' motion to dismiss the plaintiff's municipal liability claim when the plaintiff "relie[d] primarily on the DOJ report"); *Bektic-Marrero v. Goldberg*, 850 F. Supp. 2d 418, 431 (S.D.N.Y. 2012) (finding that "with the [DOJ] [r]eport, [the plaintiff] pleaded that a custom of woefully inadequate diagnosis and treatment . . . led to a violation of [her late husband's] constitutional rights").

The DOJ Report concluded, among other things, that there were medical care deficiencies at the WCJ, specifically "inadequate infection control; inadequate access to dental care; and an inadequate medical grievance process."  (Compl. Ex. 12, at 19.)  *See Shepherd*, 2012 WL 4477241, at *10 (stating that the DOJ Report, released after investigators visited the WCJ in February 2008, "documented[, among other violations,] extensive constitutional deficiencies in the provision of medical care"); *Bektic-Marrero*, 850 F. Supp. 2d at 431 (same).  The findings of the DOJ Report were based on "an extensive number of videos and documents, . . . . internally prepared [WCJ] reports," and the on-site visit in February 2008.  (Compl. Ex. 12, at 1.)  The DOJ Report's conclusions about medical care at WCJ, based on this evidence,

"constitute[] . . . sufficient allegation[s] of a 'custom' of repeated constitutional violations, which were sufficiently pervasive as to suggest acquiescence on the part of the County's policymakers." *Bektic-Marrero*, 850 F.2d at 431.  Moreover, because the DOJ Report was released in November 2009, the Westchester County policymakers were aware of the deficiencies in WCJ's provision of medical care.  In other words, there is no doubt that policymakers had notice of the "need to improve staffing and communication within the prison's medical facilities." *Id.*

The Court acknowledges that the DOJ Report was released in November 2009 and Plaintiff's allegations of inadequate medical care are based on events beginning nearly three years later.  Nevertheless, the operative inquiry at this stage is not whether the DOJ Report and its conclusions will ultimately support a finding of *Monell* liability, but rather whether Plaintiff has sufficiently alleged a policy or practice that is widespread and of which policymakers must have been aware.  Here, there is no doubt that policymakers were aware of the need to reform medical care at WCJ, as noted above.  Further, drawing all reasonable inferences in Plaintiff's favor, the Court accepts Plaintiff's allegations that the deficiencies in medical care and the medical grievance process at WCJ affected his ability to receive care in 2012.  *See Shepherd*, WL 2012 WL 4477241, at *10 (rejecting the defendant's argument that the DOJ report is "too dated to establish the existence of a policy or custom as of March 9, 2010" because "[t]he [c]ourt [was] obligated to draw all reasonable inferences in [the] [p]laintiff's favor and thus [accepted] as true for purposes of [the] motion . . . the assertion that the deficiencies found by the DOJ existed at the time of the alleged assault against [the] [p]laintiff"); *see also Santiago*, 2014 WL 2048201, at *6 (denying the defendant's motion to dismiss the plaintiff's *Monell* claim based on allegations of excessive force that occurred in February 2013, explaining, based on the DOJ

Report, that "[i]f [Westchester] County . . . was aware of the recurring use of excessive force against inmates as [the] [p]laintiff alleges, the inadequacy of its current practices was likely to result in a deprivation of federal rights")  Accordingly, Plaintiff has sufficiently alleged a widespread practice or policy of which Defendants were aware to survive Defendants' Motion To Dismiss his *Monell* claim.

### 3.  Failure to Exhaust

Finally, Defendants argue that "Plaintiff's federal claims are . . . barred by his failure to exhaust available administrative remedies."  (Defs.' Mem. of Law in Supp. of Mot. To Dismiss Pursuant to Rule 12(b)(6) of The Fed. Rules of Civ. P. ("Defs.' Mem.") 7 (Dkt. No. 15).)  The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The Second Circuit has made clear that "administrative exhaustion is not a jurisdictional predicate," but rather "failure to exhaust is an affirmative defense."  *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) (citation omitted).  Accordingly, "defendants bear the burden of proof and prisoner plaintiffs need not plead exhaustion with particularity."  *McCoy v. Goord*, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003); *see also Miller v. Bailey*, No. 05-CV-5493, 2008 WL 1787692, at *3 (E.D.N.Y. Apr. 17, 2008) (explaining that the exhaustion requirement "must be pleaded and proved by a defendant" (citing *Jones v. Bock*, 549 U.S. 199, 127 (2007)))  Moreover, the Second Circuit has recognized certain exceptions to the exhaustion requirement, that apply when "(1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense . . . or acted in such a[] way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable

misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." *Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006). "[T]he resolution of the exhaustion issue does not necessarily fit exactly into any of these three categories, and a particular fact pattern may implicate one or a combination of these factors." *Pagan v. Brown*, No. 08-CV-724, 2009 WL 2581572, at *5 (N.D.N.Y. Aug. 19, 2009) (citing *Giano*, 380 F.3d at 677 n.6)). Therefore, a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted only if "nonexhaustion is clear from the face of the complaint, and none of the exceptions outlined by the Second Circuit are germane." *Lovick v. Schriro*, No. 12-CV-7419, 2014 WL 3778184, at *4 (S.D.N.Y. July 25, 2014) (alterations and internal quotation marks omitted); *see also Lee v. O'Harer*, No. 13-CV-1022, 2014 WL 7343997, at *3 (N.D.N.Y. Dec. 23, 2014) ("Dismissal under Rule 12(b)(6) for failure to exhaust is appropriate if such failure is evidenced on the face of the complaint and incorporated documents."); *Sloane v. Mazzuca*, No. 04-CV-8266, 2006 WL 3096031, at *4 (S.D.N.Y. Oct. 31, 2006) ("[B]y characterizing non-exhaustion as an affirmative defense, the Second Circuit suggests that the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss." (internal quotation marks omitted)).

Here, under the subsection of his Complaint titled "Exhaustion of Administrative Remedies," Plaintiff indicates that he did not file a grievance. (Compl. ¶ IV.D.) Plaintiff alleges, however, that he tried on "numerous occasions" to file a grievance, but that the "correctional supervisors refused to accept [the grievances,] stating [that] [his issues were] not grievable issues [and that[] [the issues were] medical[,] not us." (*Id.* ¶ IV.F.1.) Indeed, Plaintiff alleges that he wrote to Yozzo, but received no response, and that he submitted a grievance Coletti, who refused to accept it, stating that "we are not medical" and instructing Plaintiff to

"mail the grievance to medical." (*Id.* ¶ II.D.)  When Plaintiff attempted to submit the grievance to Omess, Plaintiff was told that he was "wasting [his] time." (*Id.*)  Moreover, Plaintiff alleges that he wrote to "Captain Watkins," Kelly, Yozzo, and "the Westchester County Attorney Robert Meehan," to inform them of his condition, but received no response. (*Id.* ¶ IV.F–G.)  Finally, the Court notes that the DOJ Report found that "many of the corrections officers in [the] WCJ's housing units did not have Grievance Forms available for inmates if requested[,]" and that "when inmates and jail staff were asked where an inmate could get a form to file a grievance, both the inmates and jail staff provided inconsistent responses," supporting the DOJ's conclusion that "WCJ staff and inmates [were] not aware of the procedures for filing a grievance." (Compl. Ex. 12, at 23.)  These allegations suggest that there may be special circumstances that justify Plaintiff's failure to exhaust his administrative remedies. *See Correa v. Hastings*, No. 13-CV-5862, 2014 WL 6468985, at *12 (S.D.N.Y. Nov. 18, 2014) (denying the defendant's motion to dismiss on exhaustion grounds because "the plaintiff was first misled by a prison employee about whether he could file a grievance, and then reasonably, but incorrectly, relied on an apparently corroborative [Department of Correctional Services] directive"); *Kendall v. Cuomo*, No. 12-CV-3438, 2013 WL 5425780, at *5 (S.D.N.Y. Sept. 27, 2013) (denying the defendants' motion to dismiss for failure to exhaust because a hearing officer informed him that he was "not a Federal Judge, only a hearing officer in the Department of Corrections," and the superintendent of the prison failed to respond to his letter about his claims); *Smith v. City of New York*, No. 12-CV-3303, 2013 WL 5434144, at *27 (S.D.N.Y. Sept. 26, 2013) (concluding that "special circumstances may justify [the plaintiff's] failure to exhaust his administrative remedies because . . . [the officer] allegedly misrepresented that his issue was non-grievable").

Accordingly, based on the allegations in the Complaint, it is not clear that the exceptions to the

exhaustion requirement do not apply to Plaintiff's claim, and, therefore, Defendants' Motion To

Dismiss on exhaustion grounds is denied.

### III.  Conclusion

In light of the foregoing analysis, the Court denies Defendants' Motion To Dismiss

Plaintiff's Complaint.  However, because Plaintiff did not respond to Defendants' Motion to

Dismiss, Plaintiff is to advise the Court in writing, within 45 days of this Opinion and Order, of

his intention to pursue this case.  Failure to do so may result in dismissal of this case.  The Clerk

of Court is respectfully requested to terminate the pending Motion.  (Dkt. No. 13.)

SO ORDERED.

DATED:     March 26 , 2015
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

25